NOTE [from original report]. Jurisdiction—Citizenship Essential to.—It is settled by the decisions that in an action by an indorsee against an indorsor of a note or bill, if they are citizens of different states, this citizenship is sufficient to give jurisdiction though the maker and payee be citizens of the same state. See Coffee v. Planters' Bank of Tenn., 13 How. [54 U. S.] 183; Evans v. Gee, 11 Pet. [36 U. S.] 80; Young v. Bryan, 6 Wheat. [19 U. S.] 146; Mollan v. Torrance, 9 Wheat. [22 U. S.] 537; Campbell v. Jordan [Case No. 2,362]; Gaylord v. Johnson [Id. 5,285]; Dennison v. Larned [Id. 3,798].

[NOTE. On the trial on the merits, the jury rendered a verdict for plaintiffs. Case No. 2,-939.]

## Case No. 2,939.

CODWISE et al. v. GLEASON et al.

[Brunner, Col. Cas. 40;[1] 3 Day, 12.]

Circuit Court, D. Connecticut. April, 1808.

PROMISSORY NOTE—LIABILITY OF INDORSOR.

Though a note is void as against the maker, it may be good against an indorsor, in favor of indorsor of a note or bill, if they are citizens dorsement. The contract made by indorsement extends to all future indorsees, even where notes are not negotiable.

This case was argued on a plea in abatement at the last term; a respondeat ouster was ordered; and the case continued to this term for trial on the merits. The declaration having been already stated at length, it may be sufficient to refer to that statement (Brunner, Col. Cas. 33 [Case No. 2,938]), without repeating it here; but the case will be better understood by a statement of the following facts, in addition to those which appear on the declaration: Erastus Gay made a contract for a title to some Georgia lands with Peleg Sanford and another person, according to the terms of which he was obliged to give them a note for nine hundred and forty-five dollars, payable at the Hartford Bank, with a good indorsor. To comply with this contract Gay induced Gleason & Cowles to indorse the note in question, and after it was so indorsed he delivered it to Sanford. It was then sold to Timothy Burr, but without any indorsement; and by him it was again sold to Codwise, Ludlow & Co. for goods, and without any indorsement by Burr. It was afterwards indorsed by Codwise, Ludlow & Co. and sent to John Dodd of Hartford for collection, and by him indorsed and lodged in the bank. As it was not paid when it became due, demand was made of Burr as well as of Gay, and Gleason & Cowles. After the note was taken from the bank, the names of Codwise, Ludlow & Co. were erased, they having been entered merely for the purpose of collection. The suit in the name of Gleason & Cowles against Gay failed on the ground of fraud, and consequently of want of consideration in the contract to comply with which the note was given. An action was then brought against Burr by Codwise, Ludlow & Co., in which they claimed to recover of him as having sold, and thus become responsible for the note. His defense was that though he sold, he did not warrant the note, but that it was received by the plaintiffs entirely at their own risk. That suit also failed, and the present action was immediately commenced.

On the trial, after all the material facts alleged had been either admitted or proved, the counsel for the defendants offered evidence to prove, first, that this indorsement

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

was not intended to give a general credit to the note; and secondly, that the plaintiffs were, in reality, remote indorsees.

Mr. Daggett, for plaintiffs, objected to the testimony.

This indorsement by Gleason & Cowles needs no explanation. It admits of none. No evidence as to the intention of the parties can alter the legal nature of the instrument. This note appears to have been sent into the world under the sanction of the names of Gleason & Cowles. So merchants would universally understand it, and so courts will consider it.

Before LIVINGSTON, Circuit Justice, and EDWARDS, District Judge.

LIVINGSTON, Circuit Justice. Evidence that Gleason & Cowles indorsed the note and gave it back to Gay, in order to give him credit, and that they never negotiated it, may have some important bearing on the case. Perhaps the same fraud which procured the note to be given was used in obtaining the indorsement; and if so it may be properly laid before the jury. The evidence may, therefore, be heard.

In the argument of the case, Ingersoll and Griswold, for the defendants, contended:

1. The plaintiffs cannot recover because the note has been decided by a competent tribunal to be void. The indorsement must of course be void. The indorsement is in the nature of security, and where notes are not negotiable it can be viewed in no other light. It is the same thing, then, as if Gleason & Cowles had signed this note with Gay, as his sureties. And it must be acknowledged that a surety cannot be holden when the obligation of his principal is void.

2. From the testimony which has been let in, it appears that the plaintiffs are remote indorsees, and the defendants never indorsed the note to them. There is no privity of contract between the plaintiffs and defendants. To decide that upon these facts the defendants are liable to the plaintiffs would be giving to an indorsement all the efficacy which it has where notes are negotiable. On this principle, an indorsor can alter the nature of an instrument, and make that negotiable which was not so in its creation, which is absurd.

Mr. Daggett, for plaintiffs.

1. The contract of the indorsor is, in every case, that the sum contained in the note shall be paid when due, and for this payment he pledges himself to be responsible. It makes no difference whether the note is not paid by the maker because he is unable, or because the instrument is void, or on account of any other impediment in the way of collection. Let the cause of failure of payment be what it may, the indorsor is liable. If the note is forged the indorsor is still holden; and in a suit against an indorsor it is not necessary to prove the handwriting of the maker.

2. Nor is the contract made with the next indorsee only. It extends to all future indorsees. An indorsement in blank is a letter of credit to the whole world; and every man who trusts to it can recover of the indorsor. This principle is clearly illustrated and supported by the case of Russel v. Langstaffe, Doug. 514, where Lord Mansfield declared that the defendant, by indorsing blank copper-plate checks, gave a letter of credit for an indefinite sum; and that it did not lie in his mouth to say the indorsements were not regular. Indeed, this is a direct authority to both points, for it not only decides the general liability of indorsors on account of having given their names to the world, but declares further that the indorsor is holden though the paper indorsed was, at the time, a mere nullity.

LIVINGSTON, Circuit Justice, directed the jury that as to the first point, though he had had doubts, they were almost entirely removed. If a note were forged, the indorsement would bind the man who made it.

The second point he declared not to have altered the decision of the case from what it would have been, if the plaintiffs were the only indorsees, and the defendants the only persons through whose hands the note had passed. Gleason & Cowles gave the weight of their names to the world, and must be responsible to every man who trusts to the note relying on their credit, as every subsequent indorsee must be supposed to do, from the nature of the transaction. The case is, therefore, clearly with the plaintiffs on both points.

A verdict was accordingly found for plaintiffs to recover $1,599.20 damages.